UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80149-CR-MARRA/HOPKINS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTOPHER PAUL GEORGE,

    Defendant.

_____

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR REVIEW AND REVOCATION OF DETENTION ORDER

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and files this Response to the Defendant's Motion for Review and Revocation of the Detention Order entered in this case (DE 21).

I.    PROCEDURAL HISTORY

On October 14, 2010, a federal grand jury sitting in the Southern District of Florida returned a one-count indictment charging the defendant with possession of firearms and ammunition by a convicted person, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (DE 3). On October 15, 2010, the defendant was arrested for this offense (DE 15). On October 21, 2010, a detention hearing was held before Magistrate Judge James M. Hopkins, at the conclusion of which the Court ruled that the defendant be detained pending trial based upon the finding that the defendant poses "a danger to the community," "a serious risk of obstruction of justice," and "a serious risk of flight" (DE 18, p. 61).[1] On October 22, 2010, the Court entered a written Order reflecting its ruling

---

[1] A transcript of the hearing has been prepared and filed as DE 18.

(DE 14). On November 19, 2010, the defendant filed the pending Motion for Review of the Magistrate Judge's Order (DE 21), which he supplemented on November 21, 2010 (DE 22).

II. FACTS

The Indictment charges that, from on or about May 17, 2009 through March 3, 2010, the defendant, having previously been convicted of a felony, did possess one 9 mm. pistol, two shotguns, and 191 rounds of ammunition (DE 3, pp. 1-2).[2] At the detention hearing, it was established that these items were discovered and seized on March 3, 2010 during the execution of a search warrant at the defendant's residence, which he shared with his then-girlfriend, Dianna Pavnick (DE 18, pp. 5-6).[3] Unbeknown to the defendant, during the execution of the aforesaid warrant, law enforcement agents were intercepting his cellular telephone conversations pursuant to a court order (DE 18, pp. 4-6). At 7:04 a.m., the defendant placed a call to Pavnick, who was en

---

[2] At the defendant's detention hearing, it was established that the defendant had previously been convicted of four felony charges in two separate cases. On August 24, 2001, the defendant was convicted in the Circuit Court of the Fifteenth Judicial Circuit of Florida, case number 01CF 002313 A02, on one count of Grand Theft of a Motor Vehicle, in violation of Section 812.014 Florida Statutes, a third degree felony punishable by up to five years' imprisonment. He was placed on 18 months' probation, which he subsequently violated and was sentenced to 8 months' imprisonment. On February 4, 2003, the defendant was convicted in the Circuit Court of the Fifteenth Judicial Circuit of Florida, case number 02CF 9275 A02, on one count of Possession with Intent to Deliver New or Legend Drugs, in violation of Section 499.03 Florida Statutes, and two counts of Possession of Steroids, in violation of Section 893.13 Florida Statutes, each of which constitutes a third degree felony punishable by up to five years' imprisonment. He was sentenced to 8 months' imprisonment on those charges, to run concurrent with that imposed for his violation of probation in the 2001 case.

[3] On March 3, 2010, the government also executed search and seizure warrants at certain pain clinics operated by the defendant, among other locations. During the searches, the defendant remained in his vehicle and drove around Palm Beach County, monitoring the government's activities. The defendant was not present at his residence during the execution of the warrants (DE 18, p.5).

route to the defendant's residence, and advised her that law enforcement agents were inside the residence armed with a search warrant (DE 18, p. 6). The defendant informed Pavnick that there were two guns in the garage and told her to "say they are yours." The defendant further instructed Pavnick to "say you just brought 'em there. Say I haven't been there all night. Say I haven't been there, you just brought 'em there" (DE 18, pp. 6-7). Immediately thereafter, at 7:06 a.m., the defendant placed a call to Chris Hutson, advised him that a search was underway at the residence, and remarked, "I'm fucked ... there's fucking two guns in the garage" (DE 18, p. 7). At 7:15 a.m., the defendant placed another call to Pavnick, while she was en route to the residence, during which she assured him that she would "take the fall for everything" (DE 18, p. 7). The defendant also placed calls to Hutson and Andrew Harrington, during which they concocted a story to have Harrington claim that the pistol described above belonged to Harrington and was left there by him without the defendant's knowledge (DE 18, p. 7). When she was later interviewed during the search, Pavnick falsely stated to law enforcement agents that she occasionally shot skeet, that she had a couple of old shotguns in the garage which she had not used in a while, and that they belonged to some friends of hers with whom she went skeet shooting (DE 18, p. 7).

ATF records and the records of Dick's Sporting Goods in West Palm Beach establish that the two shotguns were purchased on May 17, 2009 by Ethan Baumhoff, a manager at one of the defendant's pain clinics (DE 18, pp. 7-8). Baumhoff will testify that these firearms were purchased by him at the specific request of the defendant and provided to the defendant shortly after their purchase (DE 18, p 8).

Other relevant facts proffered during the defendant's detention hearing included the following: The defendant, along with his employees, family members and friends, is the target of

a RICO investigation stemming from his operation of pain management clinics in South Florida through which at least 15,000,000 Oxycodone pills were distributed during a 15-month period, many of which were distributed to persons traveling from Tennessee, Kentucky and Ohio (DE 18, pp. 3-4). The anticipated charges against the defendant include racketeering, kidnaping and delivery of controlled substances, punishable by up to life imprisonment (DE 18, p. 5).  The defendant was involved in the kidnaping and assault of a person named Robert Eddy, who was believed to have stolen $500,000.00 in cash generated from the pain clinics, and during that assault a shot was fired next to Eddy's head by the defendant's brother (DE 18, p. 9). The defendant had paid Eddy to keep his silence concerning the kidnaping and assault but, fearing that Eddy may nonetheless testify, had solicited a confidential informant to murder Eddy (DE 18, p. 10). The defendant was arrested in Jacksonville for extorting a rival plain clinic owner and, while on pretrial release for that offense, continued with his criminal conduct, including the instant charge (DE 18, pp. 10-11). Within a few days of the defendant's arrest in the instant case, a photograph of a tattoo which the defendant had recently imprinted on his leg depicting a rat hanging from a noose was sent to a government witness in the pending investigation of the defendant (DE 18, pp. 11-12).  The defendant financed a fraudulent telemarketing business through which he earned approximately $3,000,000.00, and has boasted that he has earned over $30,000,000.00 from the operation of the pain clinics (DE 18, p. 12), all but $6,000,000.00 of which remains unaccounted for (DE 18, 58).  The defendant has engaged in conversations with his father during which they discussed methods to launder and conceal funds in Belize, and U. S. Customs records reflect that the defendant's passport was utilized for travel to Panama and Costa Rica during the past three years (DE 18, pp. 12-13).  In addition to shotguns, the

defendant has also been in possession of assault rifles (DE 18, pp. 13, 34-35). [4]

### III. MEMORANDUM OF LAW

It is well settled that the district court conducts a <u>de novo</u> review of the government's request for pre-trial detention. <u>United States v. King</u>, 849 F.2d 485, 490 (11th Cir. 1988). A <u>de novo</u> review, however, does not require the district court to hold a <u>de novo</u> hearing. In conducting its review the district court may rely on the transcript of the hearing that occurred before the magistrate judge. <u>United States v. Gaviria</u>, 828 F.2d 667, 668 (11th Cir. 1987). In <u>Gaviria</u>, the Eleventh Circuit also held that the United States is not required to present any witnesses at a detention hearing. The United States may present evidence solely based on the unsworn proffer from the prosecutor. The court further ruled that the magistrate judge may prohibit the defendant from calling the case agent as an adverse witness even though the agent is present at the hearing. <u>Id</u> at 670. Furthermore, the return of the indictment provides the basis for conclusively establishing probable cause that the defendant committed the charged offenses. See <u>United States v. Quartermaine</u>, 913 F.2d 910, 916 (11th Cir. 1990).

In order for a court to order the pre-trial detention of a defendant, the government is required to establish by a preponderance of the evidence that no condition or combination of conditions will

---

[4] The defendant's Pretrial Services Report also reflects his previously having been arrested for failure to appear in three separate cases. On May 4, 2000, the defendant was arrested for failure to appear on charges of simple battery and criminal mischief in Palm Beach County Court case no. 1999MM029650. On December 3, 2000, the defendant was arrested for failure to appear in two cases arising in Volusia County Court case nos. CTC00339248MMAES (Driving While License Suspended) and CTC0038038MMAES (Improper Driver License Class and Improper Headlights). The defendant also was arrested for violating probation in two separate cases arising out of Palm Beach County Court case nos. 1999MM029650 (Simple Battery and Criminal Mischief) and 1999MM032052 (Disorderly Conduct, Criminal Mischief to Police Car, and Obstruction by Disguised Person).

reasonably assure the defendant's presence at trial. United States v. Quartermaine, 913 F.2d at 917. The government may also independently demonstrate the need for pre-trial detention by presenting clear and convincing evidence that the defendant is a danger to the community. Id. The Eleventh Circuit, in accord with the legislative history of the pre-trial detention statute, observed that the risk that a defendant will continue to engage in criminal activity constitutes a danger to the 'safety of any other person or the community. United States v. King, 849 F.2d 485, 487 n.2 (11th Cir. 1988).

The record in the instant case amply supports the Magistrate Judge's determination that the defendant poses a risk of flight. The defendant faces ten years' imprisonment on the current charge.[5] The defendant previously failed to appear as required in three separate cases emanating from two different jurisdictions. The defendant does not take issue with this fact, other than to dismiss the incidents as "traffic matters" which were "quickly resolved" (DE 21, p.10).[6] The defendant has been arrested for violating probation in three other cases. Furthermore, the unrefuted evidence herein establishes that the defendant committed the instant offense, among others, while he was on pretrial release in a case pending in Jacksonville, a factor which this Court is required to consider in deciding whether no conditions of release will reasonably assure the appearance of the defendant or the safety of the community. See, 18 U.S.C. §3142(g)(3)(B). The bulk of the $30,000,000.00 in funds which the defendant claimed to have made through his operation of the pain clinics remains

---

[5] At the sentencing hearing, the government estimated the defendant's Guidelines sentence to be between 41 and 57 months' imprisonment (DE 18, p. 64), based upon an Offense Level 22, Criminal History Category I or II. This may have been an underestimate of the defendant's Guidelines sentence, based upon a re-examination of his criminal history. In any event, under the current sentencing regimen, the advisory Guidelines is only one factor which the Court must consider, and the Court may impose the maximum sentence of ten years' imprisonment.

[6] As set forth above, one of those cases involved charges of battery and criminal mischief, not mere "traffic matters" as alleged by defendant.

unaccounted for, and the defendant had been advised by his father in methods to store funds outside of the United States.[7] Moreover, the defendant is facing indictment for much more serious conduct punishable by up to life imprisonment. See, United States v. Oliver, 683 F.2d 224 (7th Cir. 1982).[8] In light of all of these factors, the Magistrate Judge was correct in finding that the defendant poses a risk of flight.

The record in the instant case also amply supports the Magistrate Judge's determination that the defendant poses a danger to the community. First, as set forth above, given his prior failures to

---

[7]In his Supplement, the defendant asserts that the discussion concerning his stashing money in Belize was only to accomplish "asset protection" to "protect from lawsuits" (DE 22, p. 2). Defendant ignores that the conversation commences with the defendant's father advising that an acquaintance of theirs had just been arrested by DEA because "someone in Kentucky turned him in down here." The defendant's father then warns that the police are probably "building a case" against the defendant, states that he doesn't want to "talk on the phone too much," and then advises him to put money in Swiss bank accounts located in Belize, remarking, "I'll tell you more in person."

[8]The defendant dismisses Oliver, stating that decision was "directed to appeal bond on a matter" and therefore is "not relevant to pretrial release" (DE 21, p. 5). In fact, at the pretrial detention hearing, the government advised the Magistrate Judge that the Oliver decision "concerned a bond pending appeal" (DE 18, p. 54). However, the relevant issue was whether the district court properly relied upon the fact that the defendant was a suspect in another case in determining that the defendant posed a risk of flight. The Seventh Circuit held as follows:

> The district court was also informed that Oliver was a suspect in the armed robbery of a jewelry store in California and that state prosecutors there intended to seek an indictment against him on those charges. What a great incentive this is for Oliver to flee. Already convicted for one crime, what reason is there for him not to attempt to avoid prosecution for the other crime which carries a far greater potential sentence.

United States v. Oliver, supra., 683 F.2d at 235. The same holds true in the instant case. Having been indicted for the instant charge, in which the evidence of defendant's guilt has been found by the Magistrate Judge to be "overwhelming" (DE 14, p. 2), what greater incentive does the defendant have to flee in an attempt to avoid prosecution for new offenses which carry a potential life sentence.

appear, probation violations, and violation of pretrial release, the defendant has amply demonstrated his inability to follow the directives of the Court.  Secondly, the defendant has engaged in acts of violence which include kidnaping and assault and solicitation to commit murder.

Additionally,  where, as here, the evidence establishes that there exists a serious risk that the defendant will attempt to obstruct justice, or will attempt to threaten, injure or intimidate a prospective witness, pretrial detention is authorized under Title 18, United States Code, Section 3142(f)(2)(B).[9]  Even prior to enactment of the aforesaid provision of the Bail Reform Act, a trial court had the inherent power to deny bail under such circumstances as those presented herein.  In United States v. Salerno, 481 U.S. 739 (1987), wherein the Court upheld the constitutionality of the pretrial detention provisions of the aforesaid Act, the Court recognized, and the defendants conceded, that "a court may refuse bail when the defendant presents a threat to the judicial process by intimidating witnesses" because "the sole purpose of bail [is] to ensure the integrity of the judicial process."  Id. at 753.  See also, United States v. Graewe, 689 F.2d 54 (6th Cir. 1982), and cases cited therein.

Since passage of the Bail Reform Act, courts have upheld the propriety of pretrial detention based upon a defendant's past conduct in which he engaged in obstruction of justice.  This is because "[a]ll bail decisions rest on predictions of a defendant's future behavior.  It would be anomalous to hold that such predictions cannot rest on a defendant's recent conduct in another proceeding, which may shed considerable light on his motive, capacity and propensity to commit certain acts if free on

---

[9] In the case at bar, the government respectfully submits, the evidence establishes that the defendant's conduct poses more than a mere risk of such activity.  The evidence establishes that the defendant has in fact attempted to obstruct justice and tampered with witnesses in the pending investigation.

8

bail." United States v. Gotti, 794 F.2d 773, 779 (2d Cir. 1986) (upholding pretrial detention of the defendant based upon his having intimidated witnesses in past cases). In ordering pretrial detention, a magistrate is "free to take both earlier and later evidence of obstruction of justice into account." United States v. Acevedo-Ramos, 755 F.2d 203, 209 (1st Cir. 1985) (upholding pretrial detention of a defendant based upon information from cooperating witnesses that the defendant had previously engaged in jury tampering). See also, United States v. Robinson, 733 F.Supp. 280, 282 (N.D.Ill. 1990) (pretrial detention supported, in part, by a prior finding of probable cause that the defendant obstructed justice in another case).

     In the case at bar, the evidence establishes that the defendant has obstructed justice and tampered with several material witnesses in the instant case and in an ongoing investigation into his activities and the activities of others. The defendant has solicited at least two witnesses to falsely claim to law enforcement agents that the firearms at issue herein belonged to them. The evidence establishes that the defendant paid a witness against him in an effort to obtain that witness' silence and, unsatisfied with that, thereafter solicited the murder of that witness. Moreover, just days prior to his arrest, cognizant of the ongoing nature of the investigation and his role in it, the defendant caused a threatening communication to be sent to another witness.[10] This is a case where pretrial detention is logically mandated in order to protect the integrity of pending judicial proceedings. Moreover, given the ongoing nature of the pending investigation, there are no less restrictive alternatives which will safeguard the Court's and the government's interests in this regard. The

---

[10] There is simply no significance to the fact that the photograph of the hanging rat tattoo recently inscribed on the defendant's leg was sent to the witness from someone else's cell phone (DE 21, p. 9). The defendant's implication that this somehow was accomplished without his knowledge or consent is vitiated by the fact that it was sent from the cell phone utilized by his former live-in girlfriend (now spouse) and co-conspirator, Dianna Pavnick.

evidence establishes that the defendant is actively attempting to obstruct the pending case and thwart the ongoing investigation.

WHEREFORE, the government respectfully submits that the decision of Magistrate Judge Hopkins should be affirmed.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By  /s/ Lawrence D. LaVecchio
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY
FLORIDA BAR NO. 0305405
500 EAST BROWARD BOULEVARD, STE. 700
FT. LAUDERDALE, FL  33394
TEL. (954) 356-7254/356-7230-fax

CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on November 23, 2010, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Lawrence D. LaVecchio
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY