UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  10-80149-CR-MARRA/HOPKINS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTOPHER PAUL GEORGE,

    Defendant.

_____

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO SUPPRESS WIRETAP EVIDENCE

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorneys, and files this Response to the Defendant's Initial Motion to Suppress Wiretap Evidence (DE 41).

I.    Facts

On November 6, 2009, an Order was issued by U. S. District Judge James I. Cohn authorizing the interception of wire and electronic communications occurring on cellular telephone number (561) 722-7506, which was subscribed to and utilized by the defendant (hereinafter referred to as "the Initial Wiretap").  On December 28, 2009,  U. S. District Judge William P. Dimitrouleas issued an Order authorizing the continued interception of wire and oral communications occurring on that telephone (hereinafter referred to as "the First Extension").  On March 2, 2010, Judge Dimitrouleas issued another Order authorizing the continued interception of wire and oral communications occurring on that telephone (hereinafter referred to as "the Second Extension"). Each of these Orders was issued pursuant to the applications of Assistant U. S. Attorneys David A.

Haimes or Robin Waugh-Farretta, and each Application incorporated the Affidavit of D.E.A. Special Agent Michael H. Burt.[1] The Affidavit for the Initial Wiretap, which numbered 69 pages, established probable cause to believe that the defendant, along with ten other individuals and others unknown,[2] was committing and would continue to commit various offenses, including distribution of controlled substances and conspiracy to do so, in violation of 21 U.S.C. §§ 841 and 846, and money laundering and conspiracy to do so, in violation of 18 U.S.C. §§ 1956 and 1957. Among the goals of the investigation set forth in the Affidavit for the Initial Wiretap, and set forth in the Order authorizing the Initial Wiretap, were the gathering of "admissible evidence regarding the distribution of controlled substances, the identity of the participants and conspirators of the organization, the precise nature and scope of the illegal activity, as well as the relationship between the financiers, manufacturers, suppliers and distributors of the controlled substances, and the collection and distribution of monies which stem from the illegal narcotics activities and/or finance the illegal drug activities." Initial Wiretap Order, p. 3. Also among the reasons for which the wiretap was ordered was to reveal "the origin, ownership, geographical scope, organizational structure and methods of

---

[1] These wiretap orders, and their underlying applications, are being provided to this Court for its review in considering the pending Motion and are designated as Gov.Ex. A through C, respectively. All of those orders, and their underlying applications and related documents, were ordered sealed when issued. Copies have been provided to the defendant herein in compliance with the government's discovery obligations under Rule 16, Fed.R.Crim.P., and in accordance with Title 18, United States Code, Sections 2517(2) and 2518(9). However, in an abundance of caution, based upon recent decisions restricting public access to wiretap materials, the government is moving this Court to file its exhibits herein under seal. See, United States v. Nelson, 2011 WL 305005 (M.D.Fla. 2011); United States v. Blagojevich, 662 F.Supp.2d 998 (N.D.Ill. 2009).

[2] In addition to the defendant, the following other individuals were named in the Initial Wiretap as "Target Subjects:" Jeffrey George, Ethan Baumhoff, Derrick Nolan, Dianna Pavnick, Dr. Cynthia Cadet, Dr. Roni Dreszer, Dr. Jocobo Dreszer, Dr. Michael Aruta, Dr. Beau Boshers and Dr. Irwin Beretsky.

distribution of controlled substances and money laundering businesses" of the Target Subjects and "the full identity of the Target Subjects, their accomplices, aiders and abettors, and co-conspirators." Initial Wiretap Order, p. 7. The record before this Court establishes that, consistent with these stated goals, during the course of the authorized electronic interceptions additional persons engaged in the illegal activities with the initial Target Subjects were identified.[3]

II.   The Motion

Although the defendant's factual assertions are stated in a shotgun fashion, and seem to incorporate various issues in a manner which impedes a logical and coherent response, the defendant's Motion, at p. 3, asserts the following three grounds upon which he maintains suppression of the evidence is appropriate:

      A.   There was no necessity for a wiretap;

      B.   The affidavits contain statements which are deliberately false or constitute a reckless disregard for the truth as defined in Franks v. Delaware, 438 U.S. 154 (1978); and

      C.   The agents failed to properly minimize intercepted conversations.

As set forth below, the defendant has not established a basis for relief upon any of these grounds, and his Motion should be denied summarily.[4]

---

[3] In the Affidavit for the First Extension, and its corresponding Order, the following persons were listed as additional "Target Subjects:" Daryl Stewart, Christopher Hutson, Martin Warshaw, Andrew Harrington and John George. In the Affidavit for the Second Extension, and its corresponding Order, the following persons were listed as additional "Target Subjects:" Dr. Patrick Graham, Phillip Ferro and Jody Stacy.

[4] Peppered throughout the Motion are other allegations which do not bear on any of these three issues. For example, in his Motion, at p. 7, the defendant asserts that information contained in the Initial Wiretap affidavit concerning his involvement in a armed kidnaping and aggravated assault stemming from the alleged theft of $150,000 in cash from the defendant was "stale," and was a "closed matter" which "cannot provide probable cause for a wiretap." As to

3

ARGUMENT

III.     Judges Cohn and Dimitrouleas properly exercised their considerable discretion in determining that the wiretap applications contained the requisite showing of necessity.

The defendant asserts that the Initial Wiretap authorized herein was unnecessary as an investigative tool because, prior to submission of the application to Judge Cohn, the government had amassed a great deal of information concerning the criminal activities occurring through the operation of the defendant's pain clinics.  While it is true that, prior to the application being submitted to Judge Cohn, a great deal of investigative work had been conducted, there existed insufficient evidence to convict all those persons against whom probable cause had been established to believe were engaging in criminal activity, and to convict all those persons for all of the various violations which were being committed.  Moreover, the Affidavit in support of the government's application set forth sufficient grounds to believe that other unknown persons were engaging in criminal activity with the persons named within the application.  Title 18, United States Code, Section 2518(1)(c) requires that each application for an order authorizing the interception of wire communications contains "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if

---

the issue of staleness, see Government's Response to Defendant's Motion to Quash Search Warrant (DE 48, at p. 15 n.7).  See also, United States v. Bervaldi, 226 F.3d 1256, 1264-66 (11th Cir. 2000) and cases cited therein.  As for the significance of this information, it clearly establishes probable cause to believe that: (a) the defendant's illegal businesses were generating large cash proceeds; and (b) the defendant was not a legitimate participant in the operation of a lawful medical facility.  Similarly, the defendant maintains in his Motion, at p. 7, that the information contained in the Initial Wiretap affidavit concerning the seizure of Oxycodone pills from a drug dealer who had obtained them from an employee of the defendant failed to establish a sufficient "connection between the alleged criminal activity and the subject of the wiretap," when clearly the evidence establishes probable cause to believe that controlled substances were being diverted from the defendant's "pill mill" and sold on the streets of South Florida.

tried or to be too dangerous." "This provision, however, does not require that the application provide a 'comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.'" United States v. Nixon, 918 F.2d 895, 901 (11th Cir 1990), quoting United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986). The standard has been clearly established throughout the federal courts that what is required is information about particular facts of the case at hand which would indicate that wiretaps are not being "routinely employed as the initial step in criminal investigation." United States v. Giordano, 416 U.S. 505, 515 (1974). See also, United States v. Dennis, 786 F.2d 1029, 1035 (11th Cir. 1986) ("the purpose of the requirement in section 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques"); United States v. Landmesser, 553 F.2d 17, 20 (6th Cir. 1977) (government is not required to prove that every conceivable method has been tried and failed, or that all avenues of investigation have been exhausted); United States v. Clerkley, 556 F.2d 709, 715 (4th Cir. 1977) (government is not required to "exhaust every conceivable technique before making application for a wiretap," and therefore electronic surveillance need not be used only as a last resort). Indeed, it has been held that wiretapping is particularly appropriate where, as here, "the telephone is routinely relied on to conduct the criminal enterprise under investigation." United States v. Steinberg, 525 F.2d 1126, 1130 (2d Cir. 1975).[5]

---

[5]The instant investigation was not the "small time narcotics case" addressed by the Court of Appeals in United States v. Lilla, 699 F.2d 99 (2d Cir. 1983), upon which the defendant so heavily relies in his Motion at pp. 40-41. Rather, the wiretap affidavits herein alleged a "far flung ... conspiracy involving numerous unknown persons" whose identities may be discovered through the wiretap, consistent with the intent of Congress in enacting the exhaustion

In making his determination under Title 18, United States Code, Section 2518(3)(c), the issuing judge considers the entire application, not just those paragraphs discussing need. United States v. Landmesser, supra., 553 F.2d at 20-21. Considerable discretion rests with the issuing judge in deciding whether other investigative methods might have been successfully employed. Id.; United States v. Alonso, 740 F.2d 862, 868 (11th Cir. 1984) ("The district court is clothed with broad discretion in its consideration of the application."). See also, United States v. Daly, 535 F.2d 434 (8th Cir. 1976); United States v. Smith, 519 F.2d 516 (9th Cir. 1975). As such, this Court's review is limited to determining whether the facts set forth in the government's application are minimally adequate to support the findings made by the issuing judge. United States v. O'Malley, 764 F.2d 38, 43 (1st Cir. 1985). "[T]he government's burden of establishing its compliance with [subsection 2518(1)(c)] is not great." United States v. Anderson, 542 F.2d 428, 431 (7th Cir. 1976). See also, United States v. Concepcion, 579 F.3d 214 (2d Cir. 2009) (reversing the district Court for suppressing wiretap evidence where the government's affidavit set forth facts minimally adequate to support the finding that a wiretap was necessary to the government's investigation and was approved by another district judge).

Here, the detailed, specific information in the initial affidavit more than established the requisite showing of necessity for the wiretap order. Agent Burt, the affiant, set forth an extensive discussion regarding the use of other investigative techniques, including physical surveillance, the grand jury process, confidential sources, undercover agents, witness interviews, consensual tape recordings, telephone record analysis, trash pulls and search warrants. Initial Wiretap Affidavit, pp. 58-65. In the face of this detailed discussion, the defendant simply argues that the wiretap was

---

requirements. Id. at 105.

unnecessary, and that "[t]he agents had more than enough cause to arrest, search, indict and perhaps convict before the first wiretap." Defendant's Motion, p. 25.[6] In so asserting, the defendant patently ignores the objectives of the investigation, as set forth in Judge Cohn's Order of November 6, 2009 which is quoted above at pp. 2-3. In the renewal applications presented to Judge Dimitrouleas, it was established that, through the use of the initial wire interceptions, other persons with whom the initial targets were engaged in criminal activity were identified, and the known scope of their criminal activity was expanded.[7] However, Judge Dimitrouleas reasonably found, in authorizing the continued interception of wire communications, that, notwithstanding the initial interception of wire communications, the goals of the government's investigation still had not been met, and that the further use of electronic surveillance was warranted. The Eleventh Circuit has repeatedly held

---

[6]In a remarkable display of argumentative gymnastics, the defendant conversely asserts, at pp. 10-11 of his Motion, that "no wiretap was necessary; traditional investigative techniques have proven no wrongdoing has occurred." The government disputes both of these contradictory claims. In United States v. Nixon, supra., the government applied for and received permission to place a wiretap on a telephone to gather more information in a narcotics investigation. As in the instant case, the defendant in Nixon later argued that the government had already gathered enough evidence by less intrusive investigative techniques, and that this evidence was sufficient to prosecute and convict those involved in the narcotics conspiracy. The Eleventh Circuit stated, "What amount of evidence will be sufficient to obtain a conviction is an imprecise concept." Id., 918 F.2d at 901. After reviewing the record, the court could not find that the issuing judge erred in his conclusion that the alternative techniques "neither had succeeded, nor would succeed, in providing enough evidence to prove the conspirators' guilt beyond a reasonable doubt." Id. The court affirmed the district court's denial of the defendant's motion to suppress the wiretap evidence. See also, United States v. Bennett, 219 F.3d 1117, 1122-23 (9th Cir. 2000) (attainment of some degree of success through use of traditional investigative methods does not extinguish the need for a wiretap); United States v. Jones, 451 F.Supp.2d 71, 83 (D.D.C. 2006) (even where the government has other evidence linking defendant to the crime, § 2518 does not prevent it from obtaining wiretaps in order to ascertain the full extent and structure of a conspiracy).

[7]In the renewal orders, Judge Dimitrouleas entered findings of probable cause that other named and unnamed persons, in addition to those persons named in the initial order, were also engaged in the crimes identified in the initial order.

that, where conventional techniques will not show the entire scope of the conspiracy, a wiretap is permissible even in those situations where conventional techniques will allow for the arrest and conviction of some members of the conspiracy.  See, e.g., United States v. Van Horn, supra., 789 F.2d at 1497.  See also,  United States v. Sandoval, 550 F.2d 427, 430 (9th Cir. 1976) (scope of investigation's objectives, including apprehension of targets' co-conspirators in drug distribution ring, rendered wiretap authority proper, despite likelihood that traditional investigative techniques could have led to the apprehension of targets themselves). Therefore, it is clear that, based upon the facts set forth in the initial application, Judge Cohn reasonably exercised his discretion in authorizing the initial wiretap, and Judge Dimitrouleas reasonably exercised his discretion in authorizing the later extension orders.

The defendant's assertions that confidential sources other than those identified in the Affidavits could have been employed during the investigation as a successful alternative to the authorized wiretaps is foolishness.  This is exemplified by defendant's statement, at p. 12 of his Motion, that, "had the agents confronted [Ethan Baumhoff] with the tapes of his undercover conversations he would have folded like a house of cards."  First, such assertions constitute nothing more than rampant speculation, impermissibly gleaned with the benefit of hindsight.  Second, the government need not utilize all possible informants before obtaining a wiretap.  United States v. Canales Gomez, 358 F.3d 1221, 1227 (9th Cir. 2004).  Third, "[C]ourts will not invalidate a wiretap order simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not."  United States v. Hyde, 574 F.2d 856, 867 (5th Cir. 1978). See also, United States v. Feldman, 535 F.2d 1175, 1178 (9th Cir 1976) (defendant not entitled to "second-guess the F.B.I. and invalidate a warrant authorizing wiretaps by suggesting a number of

8

possible alternatives reasonably discarded as not feasible by those in charge of the investigation"); United States v. Carneiro, 861 F.2d 1171, 1178 (9th Cir. 1988) (rejecting defendant's argument that the D.E.A. did not satisfy the necessity requirement because it, among other things, did not aggressively pursue interviews with persons associated with defendant's drug ring).

IV.  There were no material misrepresentations or omissions of fact in the wiretap affidavits and there is no basis for a hearing on this issue.

The defendant's Motion asserts that, at several places within the wiretap affidavits, Special Agent Michael Burt made false, misleading and/or incomplete statements which influenced Judges Cohn and Dimitrouleas in their decisions to issue the wiretap orders. The defendant's factual bases in this regard are fallacious, as exhibited below. Moreover, the government submits that the defendant has failed to meet the burden sufficient to warrant an evidentiary hearing on this issue.

In the instant Motion to Suppress Wiretap Evidence, the defendant asserts many of the same alleged deficiencies as those contained within his Motion to Quash Search Warrant and Suppress Evidence (DE 40), as some of the challenged statements were contained in the affidavit for search warrant as well as in the wiretap affidavits. Unless directed otherwise by this Court, this Response will not reiterate the government's arguments in opposition to those same defense allegations. Thus, insofar as the instant Motion asserts that the Initial Wiretap affidavit unfairly characterized the defendant's conversations concerning money laundering activity (Motion, pp. 5-6, 9), withheld information concerning impeachment material concerning witnesses (Motion, p. 8), withheld information that would have established that the defendant was not concealing his ownership of the clinics (Motion, p. 6, 11), withheld information concerning the death of Stacey Mason (Motion, pp. 12-13), or unfairly characterized the conversation involving Dr. Boshers during which the defendant

9

was introduced as a "expert" in pain management (Motion, p. 14-15), the government relies upon its Response to Defendant's Motion to Quash Search Warrant and Suppress Evidence (DE 48, at pp. 13-19) which addresses those same issues. Similarly, the government relies upon its statement of the law concerning the defendant's burden in obtaining a hearing pursuant to the dictates of Franks v. Delaware, supra., set forth in the aforesaid Response (DE 48, at pp. 11-13) other than to note that these same standards and hurdles apply to challenges to affidavits submitted in support of court-ordered electronic surveillance. United States v. Bascaro, 742 F. 2d 1335, 1344 (11th Cir. 1984).

Defendant maintains in his Motion, at pp. 15-21, that he would "take issue" with the investigative conclusions set forth in the Initial Wiretap affidavit, at pp. 49-54, concerning the unlawful distribution of controlled substances by medical practitioners. That section of the affidavit described the factors applicable in the Eleventh Circuit which would support a finding that such a practitioner prescribed or dispensed a controlled substance outside the usual course of medical practice, subjecting him to criminal liability under Title 21, United States Code, Section 841(a)(1). The affidavit cites, primarily, to United States v. Rosen, 582 F.2d 1032, 1035 (11th Cir. 1978) in establishing the requisite standards. Contrary to the protestations of the defendant, the facts set forth in the affidavit establish that the physicians employed by the defendant were dispensing and prescribing controlled substances without a valid medical purpose and outside the usual and customary standard of care. The defendant's citation to United States v. Hurwitz, 459 F.3d 463 (4th Cir. 2006) is inapposite. In the affidavit for the Initial Wiretap, at p. 52, the Hurwitz opinion was cited strictly for the proposition that "[s]ome latitude must be given to doctors trying to determine the correct boundries of accepted medical practice." The defendant, in his Motion, ignores the more recent decisions of the Eleventh Circuit, which have reaffirmed and expanded its holding in Rosen.

See, United States v. Merrill, 513 F.3d 1293 (11th Cir. 2008) and United States v. Johnston, 322 Fed.Appx. 660 (11th Cir 2009), and cases cited therein. Consequently, it is clear that, when authorizing the Initial Wiretap, Judge Cohn relied upon correct statements of the law as it existed then, and exists now, in this Circuit and there is no basis for asserting a Franks violation based upon this issue.

The defendant's Motion is replete with factual assertions which are patently belied by the record. For example, the Motion asserts, at p. 15, that "paragraph 52 of the [Initial] affidavit does not include the fact that Dr. Beretsky advised UC4 to tell his friend that taking pills are a felony ..." In fact, paragraph 52, at p. 48, of the affidavit for the Initial Wiretap, states the following: "Dr. Beretsky did state that UC4 should tell his 'friend' that taking pills are a felony ..." Similarly, the defendant's Motion, at page 29, asserts that the statement in the affidavit for the First Extension that the defendant may be looking to move money to foreign countries, including Belize, has "no support in fact or truth," when the recording of that conversation which has been provided to the defendant clearly establishes otherwise.[8] Equally specious is the defendant's claim, at p. 27 of his Motion, that the wiretap Orders are somehow infirm based upon a typographical error in the affidavits which refers to the distribution of "cocaine and other dangerous drugs" rather than "controlled substances." This is an obvious scrivener's error, which does not effect the validity of the warrant. See, United States v. Correa, 347 Fed.Appx. 541, 544 (11th Cir. 2009); United States v. McClellan, 165 F.3d

---

[8]That intercepted conversation between the defendant and his father, which occurred on November 18, 2009, commences with the defendant's father advising that an acquaintance of theirs had just been arrested by DEA because "someone in Kentucky turned him in down here." The defendant's father warns that the police are probably "building a case" against the defendant, states that he doesn't want to "talk on the phone too much," and then advises him to put money in Swiss bank accounts located in Belize, remarking, "I'll tell you more in person." See Transcript attached hereto as Gov.Ex. D.

11

535, 545 (7th Cir.1999). In fact, the corresponding portions of the Applications submitted by the respective Assistant U. S. Attorneys and the Orders issued by Judges Cohn and Dimitrouleas correctly reflect the term "controlled substances."

Lastly, the defendant maintains the existence of a Franks violation based upon the assertion in the affidavit for the Second Extension, at p. 59, that the "use of search warrants at this time is still premature," and states reasons for that conclusion, when, in fact, sealed search warrants had already been obtained by the investigating agents, who were awaiting the issuance of the wiretap order prior to executing same. The government concedes that the affidavit for the Second Extension negligently omitted this fact. The government's Application for the Second Extension was submitted to the Department of Justice for approval during the week of February 1, 2010. Due to inclement weather in Washington, D.C. and the logistical issues associated therewith, an unexpected period of delay in the approval process within the Department of Justice ensued. During that period of delay, it was decided to seek search warrants, to be executed during the period of interception in an attempt to capture conversations which would assist in achieving the objectives of the investigation that still had not been attained. Such a procedure is a permissible and effective law enforcement technique. See, United States v. Carter, 449 F.3d 1287, 1294 (D.C.Cir. 2006) ("no authority indicates that the government must cease to request wiretaps as soon as it becomes clear that another technique, such as a search warrant, may prove useful in a limited way"); United States v. Newman, 733 F.2d 1395, 1399-1400 (10th Cir. 1984) (finding no violation of Title III where investigators continued to intercept communications pursuant to an oral intercept order after searching defendant's home, noting that "[o]ne objective of the interception of communications was to identify other members of the drug conspiracy"); United States v. Abbit, 1999 WL 1074015*7 (D.Or. 1999) (finding that

12

investigators' decision to forego search warrants prior to seeking wiretap authority "appears reasonable in light of the facts presented in the application, and the investigation's stated objectives").

In the instant case, the defendant has not, and cannot, furnish proof that the facts sworn to by Agent Burt were either false or recklessly made within the dictates of Franks, that there was an intention to mislead the issuing Judge, or that the issuing Judge was in fact misled. As the Court noted in Franks, "Allegations of negligence or innocent mistake are insufficient [to warrant a hearing]." 438 U.S. at 172. Moreover, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Id. See also, United States v. Sims, 845 F.2d 1564, 1571 (11th Cir. 1978) (insignificant and immaterial misrepresentations or omissions will not invalidate a warrant); United States v. Martin, 615 F.2d 318, 329 (11th Cir. 1980) (in order to be entitled to relief "the accused bears the burden of showing by a preponderance of the evidence that the omission was more than a negligent act").

The affidavit herein establishes that a sufficient basis for issuance of the wiretap order existed even if the omitted facts were included, as the remaining facts set forth therein provided a basis for determining that the issuance of search warrants would not accomplish the objectives of the investigation absent the simultaneous interception of communications. More significantly, the record herein establishes definitively that there was no intention whatsoever to mislead the issuing Judge in any respect. After authorizing the Second Extension, Judge Dimitrouleas was specifically advised in the next periodic report to him that search warrants had been executed on March 3, 2010 at the defendant's residence, at American Pain and Executive Pain (the "pill mills" operated by the

defendant), and at the residence of the defendant's mother. See, Fifteen-Day Report to the Court dated March 22, 2010, at pp. 3-6, filed herewith as Gov.Ex. E. Judge Dimitrouleas was further advised that seizure warrants had been served at certain banks, freezing assets associated with the defendant (Gov.Ex. E, at p. 6). Judge Dimitrouleas was also advised that these investigative activities had generated certain intercepted communications involving the defendant and others during which the defendant attempted to obstruct justice, among other crimes (Gov.Ex. E, at p. 3). Having been advised of these facts, Judge Dimitrouleas authorized the continued interception of communications.

In United States v.Gambino, 734 F.Supp. 1084 (S.D.N.Y. 1990), the Court was presented with facts remarkably similar to those herein. There the government sought and obtained a wiretap from Judge Costantino for the telephone located at Concorde Furniture. The application for that wiretap made no mention of an impending search at that location. However, the following day, a search warrant was obtained for that location. In denying the subsequent motion to suppress, the Court found that "this omission does not cause suppression under Title III. Judge Costantino took no steps to vacate his wiretap surveillance order upon receiving an application for a search warrant, which indicates that he was confident that both government intrusions were justified and constitutionally and statutorily permissible." Id. at 1103. Similarly, in the instant case, there clearly was never any intention to deceive Judge Dimitrouleas and, after being advised by the government as to the occurrence, fruits, and intercepted conversations spawned by the search warrants, Judge Dimitrouleas took no steps to withdraw his wiretap order. Rather, he authorized continuation of interception, rendering the defendant's alleged omissions herein immaterial and obviating any suggestion of a valid Franks claim. There is no basis for a hearing on this issue.

V.	The government reasonably minimized the interception of communications.

The defendant asserts, at p. 30 of his Motion, that "the amount of non-minimized non-criminal calls in this matter is of great concern and ought to be reviewed to determine what relief be granted." The defendant asserts that "[i]nnumerable personal conversations were recorded" and requests a hearing upon "the failure to minimize these at least 50 calls." Defendant's Motion, pp. 30-31. This challenge to the government's minimization procedure is baseless.

Title 18, United States Code, Section 2518(5) provides that "[e]very order ... shall contain a provision that the authorization to intercept ... shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception ..." In Scott v. United States, 436 U.S. 128, 130 (1978), the Court addressed this provision. In Scott, government agents, during the conduct of a court-authorized wiretap of a telephone, intercepted all of the conversations that occurred over the telephone. Id., 436 U.S. at 130-31. The only time the agents took any steps to minimize the conversations being intercepted was when the agents discovered that the wiretap had inadvertently been connected to an incorrect telephone line. Id., 436 U.S. at 134 n.7. In affirming the decision of the court of appeals upholding the wiretap, the Court noted that 18 U.S.C. § 2518(5):

> does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.

Id., 436 U.S. at 140. The court "must make an objective assessment of the monitoring agents' actions in light of the facts and circumstances confronting them at the time." United States v. Moody, 977 F.2d 1425, 1433 (11th Cir. 1992). Perfection in minimizing extraneous interceptions

15

"is usually not attainable, and is certainly not legally required." United States v. Uribe, 890 F.2d 554, 557 (1st Cir. 1989). Moreover, as the Court instructed in Scott:

> In determining whether the agents properly minimized, it is also important to consider the circumstances of the wiretap. For example, when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise. And it is possible that many more of the conversations will be permissibly interceptible because they will involve one or more of the co-conspirators.

Id., 436 U.S. at 140.

In the case at bar, the agents were investigating a wide-ranging conspiracy to unlawfully distribute narcotics to persons who were traveling interstate, among others. The evidence set forth in the Initial Wiretap application established that the participants in this conspiracy were utilizing sophisticated methods to disguise their illegal activities and avert detection by law enforcement authorities. The defendant was utilizing numerous individuals and businesses to further these activities, including physicians, office staff, and pharmacies. Millions of dollars were being generated through this illegal activity. Thus, in light of the widespread nature of the conspiracy, and consistent with Judge Cohn's stated objectives of the wiretap order (which included the acquisition of evidence establishing "the identities of the participants" and "collection and distribution of monies" derived from these activities), it was objectively reasonable for the monitoring agents to listen to a large volume of calls in an effort to satisfy those stated objectives.

The burden of production and persuasion that the government failed to properly minimize the interceptions is upon the defendant, who is the person seeking to suppress the wiretap evidence. See, United States v. Giacalone, 853 F.2d 470, 482 (6th Cir. 1988). The defendant is not entitled to a hearing on the minimization issue because he has failed to present a sufficient showing that a

substantial violation of the minimization requirement occurred in this case. "In the absence of any evidence that a substantial number of nonpertinent conversations had been intercepted unreasonably, the court was justified in denying appellants' suppression motion without holding a full adversary-type hearing." United States v. Cirillo, 499 F.2d 872, 881 (2d Cir. 1974). See also, United States v. Giacalone, supra., 853 F.2d at 482-83 (no hearing required where defendants' allegations failed to show a prima facie pattern of insufficient minimization over the period of the interceptions, and most of defendants' examples of insufficient minimization were proper "spot check" monitoring by the agents). Certainly the defendant's bare assertion that there were "innumerable" (thereafter described as "at least 50") personal calls "which do not appear to have been in any way minimized" does not suffice. This is especially true in the instant case where, as the defendant is aware, almost 13,000 completed calls occurred during the period of interception. In fact, the minimization procedures utilized in this case were adequate, and the defendant has offered nothing in his motion to suggest otherwise or to meet his burden of establishing a prima facie pattern of insufficient minimization over the period of the interceptions.[9]

WHEREFORE, the government respectfully submits that the defendant's Motion to Suppress Wiretap Evidence should be denied summarily, foreclosing any argument that the subsequent search of the defendant's residence was tainted as a consequence of the interception of communications

---

[9] To the extent that the defendant may be objecting to the introduction of personal conversations at trial, his motion is premature. If the government at trial offers any such conversations, the court will either admit or deny them under Rule 402, Fed.R.Evid.

described herein.

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

By  /s/ Lawrence D. LaVecchio
       LAWRENCE D. LaVECCHIO
       ASSISTANT UNITED STATES ATTORNEY
       FLORIDA BAR NO. 0305405


 /s/ Paul F. Schwartz
PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY
COURT I.D. No. A5500086

500 EAST BROWARD BOULEVARD, STE. 700
FT. LAUDERDALE, FL  33394
TEL. (954) 356-7254/356-7230-fax

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on May 17, 2011, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

<u>/s/ Lawrence D. LaVecchio</u>
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY