UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

v.

CASE NO. 10-80149-CR-Marra

CHRIS GEORGE,

Defendant.

_____/

FILED BY _____ D.C.

SEP 05 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## SUPPLEMENT TO THE MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

Pro se Defendant, Chris George, is aware probation will not agree to this motion and therefore the AUSA won't either. I will further emphasize a few points that I feel are relevant:

1. I did have a leadership position in this case, which serves as a ground to recommend denial, according to probation. Although probation has informed me that this decision aligns with their policy, I would like to draw attention to point #7 in my initial motion. This highlights that Ethan Baunhoff also had a leadership role and was granted early termination. It seems inequitable for the policy to be selectively applied. In the interest of fairness and consistent adherence to the law, I respectfully petition to receive the same treatment as others involved in this matter.
2. Probation maintains a policy that requests for early termination are declined if the present offense involves violence. This rule holds true regardless of whether the violent incident occurred decades ago, as long as it's linked to the current offense. However, if the violent incident transpired more than 15 years in the past and in a separate case, the policy does not mandate denial.

    What I find paramount here is the time elapsed since the incident, rather than the specific case it's associated with, when determining someone's violent tendencies. For instance, had the same charge on the same date been in a different case, probation might view it differently.

    In my view, this particular incident from over 15 years ago is distant enough that I've evolved into a different and improved person since then. I kindly request that the focus shift to my record from the past 15 years, as it holds more relevance compared to events that occurred further back. This request aligns with the principle that career criminal

enhancements only consider the preceding 15 years, indicating that behavior after this timeframe is not a reliable predictor of future actions.

3. A law enforcement officer from the PBSO, with more than two decades of service, compiled an extensive 8-page single-spaced report regarding me upon discovering my probation status. This report was seemingly aimed at providing grounds for a probation violation, stemming from my exercise of the First Amendment right to speak at a city council public hearing – nothing more. Additionally, during my incarceration, my property was unlawfully taken by a corrupt attorney, and it's worth noting that his spouse is employed by the city. The officer seemed displeased that I had revealed the truth about a city official who was managing municipal affairs despite being entangled in bankruptcy, foreclosure, and my own property theft. Thankfully, security camera footage from the city hall was available, which was instrumental in vindicating me during a civil court proceeding. The footage helped debunk the PBSO officer's false claims about me. The judge's words concerning the officer provide a clear perspective: Here is a quote from the judge about the officer "he(officer) said he reviewed the information but didn't, this (police report) is a travesty this should never have been put up here in this injunction there is not a word in this report I feel comfortable believing nor do I believe the deputy because every time he asked a questioned it changed and then he would change it all over again he is absolutely not a credible witness, and he can't even tell me his report is true and correct this is a problem for the court, your deputy sheriff is a little hyper and overactive about what he is doing, but that travesty of a report is ridiculous which is either hearsay or stuff he didn't bother to investigate I can't accept that I can never believe that" Regrettably, there seems to be a lack of consequences for this officer's misconduct, as his superiors have not taken disciplinary action, permitting him to persist in such behavior. This situation underscores the presence of two distinct justice systems, but I'm advocating for the establishment of a unified and just approach in my own case. Due to my probationary status, I do not participate in these city meetings, fearing a recurrence of the officer's false allegations, and I may not possess video evidence to vindicate myself on a subsequent occasion.

4. My probation officer was privy to the audio recording of the judge's statement that I presented to him, and he can verify the content of what was spoken. This occurrence underscores a disconcerting reality: being on probation appears to provide an incentive for an officer to fabricate falsehoods about me, with the intention of securing my return to incarceration. This officer seemed to have made inquiries to ascertain my probation status and the associated limitations, seemingly in an effort to construct a narrative against me. I acknowledge that this situation doesn't reflect any shortcomings on the part of the court. However, my co-defendants have shared instances where probation restrictions impede their involvement in their children's school activities, while in my case, it's being utilized

to wrongfully re-imprison me. Consider the scenario where video evidence isn't available. In such a case, I strongly believe that I could be confined behind bars right now. This issue doesn't end here; it looms over me and could recur. I don't intend to delve into conspiracy theories; I'm simply highlighting that a judge has supported this trajectory, even dismissing a civil case due to the officer's dishonesty. As the judge aptly stated, the officer's behavior could be characterized as "hyper" and "overactive," as he perjured himself to orchestrate my return to prison without having committed a single offense. While probation did mention a commitment to thorough review prior to initiating violations – which fortunately kept me from being violated – my exoneration hinged solely on that video evidence. But what happens next time, when I lack video proof? The answer is unsettlingly straightforward: an innocent person will be incarcerated, and that person is likely to be me.

5. I haven't had any direct communication with the AUSA, so my perspective is solely based on their previous recommendations. It appears that the AUSA's stance might be inconsistent if they were to claim that granting me probation termination 1.5 years ahead of schedule wouldn't serve as a sufficient deterrent to criminal behavior or adequately safeguard the public against potential future offenses. This contradiction arises considering that the AUSA advocated for my release from prison 5.25 years prior to my original sentence's completion. In this case, I would appreciate the AUSA taking a more active role rather than solely deferring the decision to the probation department. It seems that the probation department is adhering to general policies without considering the unique circumstances of my case. I believe it's crucial for my 13-year record to be taken into account when evaluating this matter.

6. I am aware that prevailing in this motion might be a challenge, yet I'm eager for the court to be well-informed about the facts and consider them thoroughly. I have diligently followed through with my intended actions and aspirations. Probation has mentioned instances where judges have granted similar motions despite probation's reservations, and I believe this situation is akin to those cases. With due respect, I kindly urge the court not to solely rely on the AUSA's and probation's opposing stance, for the explanations delineated earlier and detailed in my original motion.

WHEREFORE, the Defendant respectfully requests that this court grant early termination of the three-year supervised release. The Defendant has already served 18 months, leaving 18 months (50%) remaining.

Dated: August 30, 2023.

Respectfully submitted,

/s/

Chris George, Defendant, Pro Se
1861 Primrose Lane
Wellington, FL 33414
561-762-9887

Chris George
1861 [illegible] Cr
Lell, FL 37414

MIAMI FL 330
2 SEP 2023 PM 2 L

Judge Marra
701 Clematis St. Rm 316
WPB, FL 33401

33401-511191